Mrs. J. M. SANDONE et vir, Appellants,

v.

DALLAS OSTEOPATHIC HOSPITAL,
Appellee.

No. 6938.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 16, 1959.

Rehearing Denied Jan. 25, 1960.

Arthur N. Bishop, Jr., Dallas, for appellants.

Thompson, Knight, Wright & Simmons, Dallas, for appellee.

CHAPMAN, Justice.

This is a summary judgment case for malpractice and negligence filed on April 12, 1958. Damages were sought by appellant, Mrs. J. M. Sandone, joined pro forma by her husband, J. M. Sandone, against Dallas Osteopathic Hospital and three osteopathic practitioners, Arthur W. Kratz, D. O.; Joe De Petris, D. O.; and Martha Winkler, D. O., the latter an intern in said hospital at the time material hereto. Mr. Sandone, being only a party pro forma, appellants will be hereafter referred to in the singular.

Appellee filed its motion for summary judgment based upon appellant's original petition, appellee's original answer and the affidavit of Louis S. Taylor, Administrator of appellee hospital. Attached to said affidavit were copies of the original charter of Dallas General Hospital, amendment to said charter changing the name to Dallas Osteopathic Hospital and amendment to the charter of the last named hospital. Subsequently, appellant filed her request for admissions and her motion to dismiss the motion for summary judgment. Approximately six months thereafter the court heard the motion for summary judgment and found there was no genuine issue as to any material fact. On the same day all parties acquiesced in a severance of Dallas Osteopathic Hospital from the other parties defendant and agreed on finality as to it of said judgment. It was agreed that trial on the merits as to the other parties defendant was not to be affected thereby. From the trial court's ruling on the motion for summary judgment appellant perfected her appeal to the Court of Civil Appeals of the 5th Supreme Judicial District at Dallas, and the case was transferred to us by the Supreme Court for determination. In her first four and last three points appellant urges the proposition that a genuine issue as to the material facts concerning whether appellee was a "charitable institution" existed, hence the court erred in sustaining appellee's motion for summary judgment.

The institution as a charity was pleaded in appellee's answer, sworn to be such by its administrator, urged by it in its motion for summary judgment, and its charter as amended seeks to bring it within that category. Among other things, the charter sets out the hospital's purposes as being the acquisition, erection, maintenance and operation of a benevolent, charitable, scientific and educational hospital and clinic for the purpose of administering to the sick, to the infirm, to the helpless, to the maimed, and to the afflicted of all creeds, colors and nationalities, etc.; the development of young surgeons and physicians in the study and research in the various fields of medicine, osteopathy, surgery, and human suffering, and to receive donations, gifts and devises to further said work; that no part of the net earnings shall ever inure to the benefit of any member, officer, director or private individual; and that any receipts in excess of the expenses of purchase or erection, operation, and maintenance shall be applied

by the corporation to the care of charity patients, and to the equipment and enlargement of said hospital and clinic.

Its administrator, Louis S. Taylor, made affidavit that "To my knowledge, the Dallas Osteopathic Hospital immediately prior to, on and after March 1, 1958 was operated in accordance with its Charter as amended as shown by said Exhibits. To my knowledge, said Hospital is not operated for profit and no dividends nor other financial benefit inures to any member, officer, director or other private individual out of the operation of said Hospital.

"The United States Treasury Department has entered a ruling that Dallas Osteopathic Hospital is a charitable corporation and, not only is it immune from taxation under the Federal Tax Laws, but contributions made to it by donors may be deducted under the provisions of the Internal Revenue Code." Appellant offered no affidavits or depositions in opposition to appellee's motion for summary judgment, and other than unsworn pleadings has nothing whatever to oppose such motion and affidavit except the answers to her requests for admissions. Neither is there a showing that affidavits on her behalf were unavailable. The record shows a "Plaintiff's Motion For Discovery" filed but same does not show to have been acted upon and no point is brought forward for the court's failure in that respect.

Appellant, in her request for admissions under Rule 169 Vernon's Annotated Texas Rules of Civil Procedure asked the Administrator a hundred fifty-eight questions. Many of them were held by the court, in a pre-trial order, as not necessary to be answered for the various reasons asserted in appellee's objections to the request for admissions. Of those answered it was established that appellant arrived at the hospital by ambulance about March 9, 1958; that a deposit of $100 was requested and received from her; that defendant Martha Winkler graduated from the Chicago College of Osteopathy in 1957 with a degree of Doctor of Osteopathy; that she had a temporary license from the State Board of Medical Examiners of the State of Texas and was serving her internship during the period in question; that on or about the evening of March 9, 1958, or early the following morning she injected chemicals containing dextrose and potassium chloride by means of a needle inserted into a vein of the lower right leg of appellant; that a lesion on appellant's lower right leg appeared and was apparent to the agents and/or employees of appellee between the 16th and 23rd days of March, 1958; that appellee knew appellant had no such lesion when she entered the hospital and knew she did have it when she ceased to be a patient; that appellant never left the hospital from the time she checked in until she left it about March 23; and that appellee carefully checked the qualifications of all prospective employees.

The first basic question with which we are then presented in the points under discussion is what constitutes a charitable institution under the laws of Texas. The Dallas Court of Civil Appeals in Baylor University v. Boyd, 18 S.W.2d 700, has held that a hospital not being operated for profits but at the end of the fiscal year placing in its general fund, and using for its general charitable purposes, any surplus, however derived, above expenses of maintenance and operation, is a charitable institution, though requiring of patients payment of their board according to their circumstances and accommodations received and this though no person may individually have the right to demand admission.

Our Supreme Court, in Southern Methodist University v. Clayton, 142 Tex. 179, 176 S.W.2d 749, has held that charity corporations are immune from liability for torts of their agents, in the absence of negligence in employing or retaining the latter, whether the injured party be a beneficiary of the trust or a stranger to it.

The charity status of the hospital was attacked by appellant on the theory that appellee used the "profit and loss" system

of accounting rather than the "fund" system. The hospital admitted it did so but we believe that alone is insufficient to raise a fact issue on the question. Appellant has not furnished us with any authority holding that the use of such accounting system would raise a fact issue as to the charity status of an institution, nor have we found any such authority.

Appellant further contends that certain denials made in the answers to her request for admissions raise a genuine issue as to appellee being a charitable institution. We are unable to follow such reasoning. If a denial of a question asked in requests for admissions made a fact issue such as to preclude a summary judgment it would virtually, if not completely, defeat the purpose of the rule. The San Antonio court has said, "We do not believe that either the letter or the spirit of Rule 169, Texas Rules of Civil Procedure, would permit such a construction of such Rule 169 as appellants contend for. The answers to the request for admission of facts are not in any sense a deposition and are not governed by the same rules of procedure as those observed by the courts in regard to depositions. A party who has requested admissions may introduce in evidence admissions of the adverse party without being bound by such party's denial of other facts or refusal to admit other facts about which requests for admissions are made. He is not bound by such denials or refusals to admit. The purpose of the rule is to eliminate the necessity for making proof on the trial of a case of facts which are not in controversy. When the answering party denies or refuses to make an admission of fact, such refusal is nothing more than a refusal to admit a fact. It is not evidence of any fact except the fact of such refusal." Halbert v. Sylestine, Tex.Civ.App., 292 S.W.2d 135, 138.

In her 11th point appellant asserts appellee withdrew its defense of charity by its admission against interest, claiming its failure to collect the other $248 the rec-

ord shows is unpaid on her hospital bill precludes any defense that might arise from doing so. She claims the hospital is estopped from denying she suffered injuries. As in other points brought to us appellant's counsel has made generalized statements of purported law and then cited numerous cases (more than 20 in this instance) without pointing out to us where they are applicable to the statements made. Such briefing places entirely too great a burden on an appellate court. Nevertheless, we have checked the cases cited and found none of them to be in point on the statements made. The evidence itself does not justify the claim of error in this point even if it could be said appellant's point 11 correctly stated a proposition of law.

In her point 12 appellant asserts error of the court in rendering judgment on the defense of charity "in that such amounts to a refutation of the joint tort-feasor rule, without trial on the merits." From our view of the case appellant has wholly failed to raise a question of fact on the charity status of the hospital or to show negligence in any of the particulars alleged against it. With a non-liable defendant the question of whether its agents, servants and/or employees contributed to appellant's damages becomes immaterial. We are familiar with the holding of the Supreme Court in Riley v. Industrial Finance Service Co., 157 Tex. 306, 302 S.W.2d 652 and Landers v. East Texas Salt Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731. But in the case at bar all parties agreed to a severance of the appellee from the other parties' defendant, on finality as to it of the judgment, and that a trial on the merits as to the other parties' defendant was not to be affected thereby. Surely such agreement would show the intention of the parties thereto that the other tort-feasors are not discharged, but that appellant is reserving her cause of action as to such unreleased wrongdoers such as contemplated in Riley v. Industrial Finance Service Co., supra.

In its point 5 appellant urges negligence on the part of appellee in hiring and re-

taining its agents and/or employees "whose incompetence proximately caused, aided, or abetted her injuries." She seems to contend that under the doctrine of res ipsa loquitur appellee was negligent in employing and retaining those whose negligence contributed to the injuries. Appellant did not have the lesion when she came to the hospital as a patient, she had it when she left, those facts were known to appellee, and, therefore, she reasons, appellee was negligent in the employment or retention in its employment of those whose negligence caused or contributed to cause her injuries.

■■ Even if we surmise from the record that the lesion resulted from the injection we still cannot say it is more reasonably probable that it was due to the negligence of appellee in employing and retaining in its employment defendant Winkler than to some other cause. The record is silent so far as there being an affidavit, admission, deposition, or statement of any nature of any medical authority, or anyone qualified to state the cause of the lesion. Any number of causes might have been probable so far as those of us who are laymen in the medical field may be able to determine from the record. The treatment was prescribed by appellant's own doctor. The judge of the trial court may have considered it just as probable that the prescription of appellant's doctor was improper or that she was allergic or hypersensitive to such treatment and that such could not be anticipated or determined. In our case if the injuries may have happened as a result of one or more causes, and it is not more reasonably probable that it was due to the negligence of appellee in employing or retaining those servants and/or employees whose negligence caused or contributed to cause her injuries than to another cause the doctrine of res ipsa loquitur does not apply. Benkendorfer v. Garrett, Tex.Civ. App., 143 S.W.2d 1020; Davis v. Castile, Tex.Com.App., 257 S.W. 870. We cannot say from the record that it is more reasonably probable that the employment or retention of defendant Winkler or any other employee constituted negligence of appellee that proximately resulted in the injuries than did some other cause. Appellant simply did not furnish the trial court with any summary judgment evidence to raise the question. Additionally, the Fort Worth Court has held that mere showing that an employee was negligent, which resulted in injury, does not prove or tend to prove negligence on the part of appellee in the selection or retention of the offending nurse. Steele v. St. Joseph's Hospital, Tex.Civ. App., 60 S.W.2d 1083, 1087. Further, the only evidence directly on the subject was administrator's answer in the request for admission, which is that appellee exercised care in the selection of its agents and/or employees. We hold in our case that the negligence alone of defendant Winkler, if she was negligent, was not sufficient to raise the question of negligence of appellee in her selection or retention as an intern.

In points 6 and 7 appellant asserts error of the trial court in granting summary judgment, when there was a material fact issue as to whether appellee was negligent in failing to provide safe equipment for treating her and poor drugs and/or chemicals in treating or administering to her.

■■ The only breach of duty pleaded by appellant other than that discussed was that appellee permitted the injection of chemicals into appellant's body when such chemicals had not been proven safe and harmless and that it failed and refused to provide proper means for aiding her to recover from the harm caused by the injection. We recognize the liberal rule favoring the party against whom summary judgment is sought. But even if we should say there are pleadings to support the points there still is not any fact issue raised by any form of summary judgment evidence. All appellant's pleadings in every shape, form or fashion are signed by her counsel and unsworn to, there is not an affidavit or deposition to raise the issues, and the answers made to the requests for admissions only prove appellee's position. Where pleadings,

sworn statements and admissions show a defendant to be entitled to summary judgment and a plaintiff does not file counter-affidavits or show he or she is not in position to do so the trial court is justified in accepting defendant's affidavit, motion and answers to requests as true and entering summary judgment. Rountree v. Bridwell, Tex.Civ.App., 269 S.W.2d 824; Estes v. Oilfield Salvage Company, Inc., Tex.Civ. App., 284 S.W.2d 201; Lacy v. Carson Manor Hotel, Inc., Tex.Civ.App., 297 S.W. 2d 367; Aydelotte v. Anderson, Tex.Civ. App., 280 S.W.2d 945; Rolfe v. Swearingen, Tex.Civ.App., 241 S.W.2d 236, 239.

■ What we have already said disposes of appellant's point 8. In its point 9 appellant claims a fact issue existed on her claim for exemplary damages. This point is not well taken. There can be no recovery of exemplary damages in the absence of recovery for actual damages. Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397.

In studying this case we have viewed all the evidence in the light most favorable to appellant and indulged in her favor every intendment reasonably deducible from the evidence. In doing so we still have to say that her neglect or refusal to file at least one counter-affidavit, a sworn statement of some sort, or secure a deposition 'or admission countering appellee's summary judgment evidence requires us to hold the trial court had no other alternative except to grant the motion for summary judgment. Had the case been tried on its merits before a jury and the same record made as that which has been brought to us appellee would have been entitled to an instructed verdict in its favor.

Accordingly, the judgment of the trial court is affirmed.

### On Motion for Rehearing.

In its motion for rehearing appellant asserts our court erred in accepting as competent the affidavit of appellee's Administrator when such competence was vigorously challenged. If we read the record correctly, two of the questions in her requests for admissions which challenged affiant Taylor's competence to make an affidavit were objected to by appellee and the objections sustained by the trial court. The questions were numbers 135 and 136 and were:

"135. Louis S. Taylor is not of sound mind.

"136. Louis S. Taylor has heretofore been convicted of a crime or offense."

Appellee objected to the two questions "for the reason that the same are scandalous and not filed in good faith." The transcript before us shows such objections were sustained. Thus, so far as those two questions are concerned the trial court resolved affiant's competence.

■ Appellant's motion further challenges the affidavit because it did not show affiant was above the age of 21 years. Rule 166–A V.A.T.R., Section (e), requires only that the affidavit shall show affirmatively that the affiant is competent to testify to the matters therein stated. As we read the rule there is no requirement that the affiant must be over 21 years of age. We know of no law in this state requiring a person as a matter of law to be over 21 years of age in order to be a competent witness.

In her motion for rehearing appellant further states:

"The most startling discovery is that the mere fact that a hospital has been given tax exemption does not make it 'charitable.'"

Nowhere in the court's opinion did we hold such a showing makes the institution a charity. We merely stated such fact as one of the many reasons appellee contended the hospital was a charity.

Because of the strict rules against granting summary judgment, we have studied ap-

pellants' motion for rehearing very carefully, as we did her brief on appeal. We can see many methods by which a fact issue might have been raised in this record but we are unable to find any place where a single one of those methods was employed.

Accordingly, the motion for rehearing is overruled.